# United States Court of Appeals
## For the Eighth Circuit

———————————————

### Nos. 12-2130 and 12-2220

———————————————

Joshua Alan Williams

*Plaintiff - Appellant*

Chartis Casualty Company, et al.,

*Intervenor*s - *Appellants*

v.

TESCO Services, Inc., Originally Sued As TESCO Corporation; Jeffrey Anderson

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

——————————

Submitted: January 17, 2013
Filed: July 2, 2013

——————————

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

——————————

LOKEN, Circuit Judge.

Joshua Williams was severely injured while working on an oil and gas rig in Conway County, Arkansas. After recovering workers' compensation benefits from

his employer, DeSoto Drilling, Inc. ("DeSoto"), Williams commenced this diversity action for damages, asserting tort claims against various third parties including rig and drilling equipment manufacturers; TESCO Services, Inc. ("TESCO"), the contractor installing casing pipe in the well-hole at the time of the accident; and Jeffrey Anderson, a TESCO employee. Chartis Casualty Company, DeSoto's workers' compensation carrier, intervened in the lawsuit, seeking a statutory lien on Williams's recovery from third-party tortfeasors. See Ark. Stat. § 11-9-410(a)(1).

Williams and two manufacturers settled after the district court[1] denied their cross motions for summary judgment. After further briefing, the court granted summary judgment dismissing negligence claims against Anderson and TESCO on the ground that these defendants' common law duty of ordinary care to Williams, as informed by the contractual relationships between the parties, did not "require Anderson and TESCO to foresee" that the actions of Williams's co-workers would result in his tragic injury. Williams v. Anderson, No. 4:09-cv-459, 2012 WL 1314150, at *5 (E.D. Ark. Apr. 16, 2012). The court also struck an untimely report by Williams's expert witness and denied his belated motion to amend the complaint to add a failure-to-train claim against TESCO. Williams and Chartis separately appeal these rulings. We consolidated the appeals. Reviewing the grant of summary judgment de novo, we affirm. See Koch v. Sw. Elec. Power Co., 544 F.3d 906, 908 (8th Cir. 2008) (standard of review).

## I. Background

As we are reviewing the grant of summary judgment in favor of defendants Anderson and TESCO, we state the material facts, when disputed, in the light most favorable to Williams, the non-moving party.

---

[1]The Honorable D.P. Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

-2-

**A. The Parties.**  Southwestern Energy Production Company ("SWE") was the Owner/Operator of the oil and gas well.  SWE hired DeSoto, its wholly-owned subsidiary, to serve as the Drilling Contractor.  DeSoto owned Drilling Rig #9, on which the accident occurred, and employed a drilling crew that included Williams to operate the rig.  MD Cowan, Inc. designed and manufactured Rig #9.  Rig Technology, Ltd. supplied the rig's hoist system, or drawworks, which raised and lowered a power swivel, or top drive, on the mast of the rig.  SWE hired TESCO, an independent contractor, to provide casing services for the well.  Installing casing pipe, which preserves the structural integrity of the well-hole, is a specialized service that is often not performed by Operators or Drilling Contractors.  For these services, TESCO provided a "TESCO tool" that DeSoto attached to the rig's top drive.  SWE's On-Site Representative, Laddy Pendergraff, coordinated and oversaw the operations of DeSoto and TESCO.

DeSoto began drilling the well in early April, 2007.  Ten days later, casing operations began.  Williams's expert explained:  "DeSoto's Rig Crew would operate Rig 9 while Tesco's Casing Crew would control the details of the work with regard to handling, making-up and running the Casing."  To install casing pipe, DeSoto's Driller, at the time in question Assistant Driller Derrick Long, hoisted the top drive with the attached TESCO tool upward along the rig mast while a pipe boom lifted a 40-foot section of casing pipe into position.  After the Driller, operating the drawworks, lowered the TESCO tool over the top of the casing pipe, TESCO's Casing Drive System Operator, in this case Jeffrey Anderson, locked the TESCO tool onto the pipe section.  The Driller then lowered the casing pipe to the well-hole and, using the TESCO tool, rotated the pipe section, threading it into the existing "string" of casing pipe until firmly connected.  The entire string was then lowered into the well-hole and the process repeated until the needed sections of casing pipe were connected and cemented into the well-hole.

**B. The Accident.** On the morning of the accident, the top drive came out of alignment with the well-hole, causing sections of casing pipe to become "cross-threaded." Casing operations halted. DeSoto's rig foreman, Wade Hargis, ordered Williams and another DeSoto employee, Will Cox, to climb the two sides of the rig mast and realign the top drive. Because of inclement weather, Long, Anderson, and Pendergraff went inside a shelter, the "doghouse," on the floor of the rig.

Some 45 minutes later, Cox climbed down after completing his adjustments and went into the doghouse. Williams testified that he finished his adjustments and started down, but Hargis, standing on the rig floor, told Williams to climb back up and make more adjustments, which he did. In the doghouse, Long asked Cox if they were done; Cox replied he had done all he could. Pendergraff told Long to "get this show on the road" because cement trucks were waiting. Hargis, now inside the doghouse, said, "yeah, let's go." Long and Anderson, unaware that Williams was still atop the mast making repairs, went outside to their controls. Each looked up and saw no one on the mast because Williams was behind the top drive. Anderson had a file in his hand to repair a cross-threaded pipe section sitting in the slip, but Long needed to raise the top drive so that Anderson could access the pipe threads. Long asked Anderson if he was ready. Anderson said, "Pick it up," referring to the top drive. Long engaged the clutch and moved the top drive upward, pinching Williams's right leg so severely it had to be amputated above the knee.

**C. Procedural History.** Williams filed this action in June 2009. The complaint alleged negligent design and failure to warn claims against MD Cowan and Rig Tech because DeSoto's crew did not use the rig's "Lock Out/Tag Out" system when repairing the top drive misalignment, a system intended to ensure that the hoist *cannot* be restarted while an employee such as Williams is in harm's way. Those claims are not before us because Williams settled with Cowan and Rig Tech after discovery closed and the court denied cross motions for summary judgment.

The complaint also asserted negligence claims against Anderson and TESCO, alleging that Anderson negligently "directed that the top drive be moved," and that TESCO was "vicariously liable to [Williams] because the negligence of Anderson is imputed to it under the doctrine of respondeat superior." After close of discovery, the parties filed cross motions for summary judgment. Williams argued that Anderson breached a common law duty of care and a duty imposed by the SWE/TESCO contract when he instructed Long to move the top drive when it was unsafe to do so. TESCO and Anderson argued that Anderson owed Williams no common law or contractual duty of care because "the repair work Williams was performing on the top drive was not in any way related to Tesco, and because Anderson had no authority to cause the rig to be restarted after Williams made repairs to the top drive."

The district court denied TESCO and Anderson summary judgment without prejudice, concluding that "Anderson owed no duty of care to Williams through a contract to which he was not a party," but advising that it "need[ed] more help from the parties on the material undisputed facts, and the law, about what common-law duty, if any, Anderson owed Williams in the particular circumstances presented by this drilling operation." Williams v. MD Cowan, Inc., No. 4:09-cv-459, 2011 WL 4527361, at *4-5 (E.D. Ark. Sept. 29, 2011). The court invited these Defendants to renew their motion, with additional briefing from the parties on the common law duty question and "focused excerpts from the evidentiary record" concerning the relationship between the employees of DeSoto and TESCO at the drilling site. Id. at *5.

After receiving additional briefing, the court granted Defendants' renewed motion for summary judgment. Anderson and TESCO had a duty to use ordinary care in fulfilling TESCO's obligations under the casing contract, the court explained, properly citing our decision in The Shaw Group, Inc. v. Marcum, 516 F.3d 1061 (8th Cir. 2008). But Anderson and TESCO had no duty to guard against risks they could not reasonably foresee. In the contract, TESCO promised that it would comply with

-5-

SWE's safety rules, but TESCO "did not promise to police [SWE's] compliance with that company's own safety rules [or] DeSoto Drilling's compliance with its parent company's safety rules." Anderson, 2012 WL 1314150, at *2. DeSoto had undisputed control of the rig, its drawworks, and the top drive. Long's decision to move the top drive was authorized, "indeed, directed," by his bosses, Hargis and Pendergraff. Id. at *4. Anderson needed the top drive moved to work on the cross-threaded section of casing pipe and encouraged Long to move it. But "ordinary care did not require Anderson and TESCO to foresee that Anderson's encouraging word might push Long -- a worker with independent control of the rig and orders from his own bosses -- to do something he did not already intend to do." Id. at *5. The court also struck a second report by Williams's expert and denied a motion to amend. These appeals followed.

## II. The Grant of Summary Judgment

The parties agree that Arkansas law governs this diversity action. Under Arkansas law, to prevail on his claim of negligence, Williams must establish that Anderson failed "to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them. . . . The question of what duty, if any, is owed a plaintiff alleging negligence is always a question of law and never one for the jury." Marlar v. Daniel, 247 S.W.3d 473, 476 (Ark. 2007). An electric utility's duty of care, for example, is "to anticipate and guard against events which may reasonably be expected to happen," but the utility is not negligent if it fails to anticipate events "that can not be reasonably foreseen." Koch, 544 F.3d at 909 (Arkansas citations and quotations omitted). "[N]egligence cannot be predicated on a failure to anticipate the unforeseen." Ethyl Corp. v. Johnson, 49 S.W.3d 644, 648 (Ark. 2001) (quotations omitted).

On appeal, agreeing with the district court that Anderson's common law duty of care is informed by the 2002 contract between TESCO and SWE, Williams and

Chartis argue that TESCO's promises to "take all necessary precautions to keep and maintain the workplace free from recognized hazards caused by [TESCO and its employees and agents] . . . [and to] comply with all applicable safety, health, and environment rules of [SWE]" mean that Anderson breached his duty of care when he instructed Long to move the top drive without making sure it was safe to do so. Like the district court, we disagree.

Appellants' arguments intermingle distinct issues that in our view should be separately considered. First, likening TESCO to the Army contractor in The Shaw Group, Williams argues that the contract imposed upon TESCO the duty to "be safe at all times, whether during their work or the work of rig workers during Casing Operations," and this duty "obligate[d] Anderson to recognize unsafe situations, regardless of how they arise." In The Shaw Group, an Army Private was electrocuted when he leaned against an abandoned, metal latrine being demolished by The Shaw Group under a contract with the United States Army. 516 F.3d at 1064-65. Applying Arkansas law, we affirmed a jury verdict that The Shaw Group breached its contractual duty to use ordinary care to prevent this foreseeable risk of harm. Id. at 1067.

Here, TESCO was not a sole contractor, in charge of all operations. As the district court observed, "DeSoto Drilling, not TESCO, was the party contractually situated like The Shaw Group." Anderson, 2012 WL 1314150, at *2. In its contract with SWE, TESCO agreed that it and those under its control would comply with all applicable safety rules of SWE "in the performance of Work or in connection therewith." But the contract defined "Work" as "all the services and goods *provided by [TESCO]* at the request of [SWE]." (Emphasis added.) In these circumstances, the scope of Anderson's common law duty on the job site was not without boundaries. We agree with the district court that TESCO promised that its agents such as Anderson would comply with SWE safety rules while performing TESCO's casing operations, but not that Anderson would "police DeSoto Drilling's compliance

-7-

with [SWE's] safety rules." Stated differently, the SWE contract did not establish that the common law duty of care Anderson owed to Williams extended to preventing unforeseen injuries caused by DeSoto's failure to follow SWE's safety rules.

Second, more narrowly, Williams argues the district court erred in concluding that Long rather than Anderson was in control of the rig's drawworks and top drive when they were used to install casing pipe: "Anderson was on the floor [of the rig] to resume [casing] operations. He was in charge. Long was waiting on instructions for the next step. Long may have known what the next step was, but Anderson gave the instruction." This contention -- that TESCO and thus Anderson controlled the rig's drawworks and top drive during casing operations -- is contrary to overwhelming evidence in the summary judgment record. Neither the contract nor SWE's safety rules empowered Anderson (or any TESCO employee) to control the operation of the rig and, critically, the movement of the top drive along the rig mast. Randy Payne, DeSoto's operations manager, testified to the contrary:

> The driller controls his crew. The rig manager has control of the entire operation. It doesn't really matter who tells our people what to do. The person that's operating the rig, whether it's the driller or the [assistant driller], they ultimately assume responsibility of what's going on, knowing what's going on, and if they can or cannot perform that -- because we have people out there telling us all the time to pick up, set down, stop, do this, do that, and that's why we have the people we do to make sure that all of that is coordinated and is done correctly.

Payne's testimony was corroborated by Long, who testified that Anderson was not involved in determining whether it was safe to re-energize the top drive and that drillers are ultimately responsible for moving the top drive along the rig mast with the drawworks; Williams, who testified that TESCO employees were prohibited from running the rig and could not order DeSoto employees to perform tasks; and Nathan Davis, a TESCO employee and Anderson's trainee, who testified that Long made the

decision to move the top drive. Anderson described the relationship in layman's terms when cross examined about SWE's safety rules at his deposition:

Q. (By [Williams's attorney]) . . . do you see where under "Restoring Equipment to Service," it says, "Verify that all employees are safely positioned or removed from the area"? . . . That's their policy.

A. I understand that and this is -- this is DeSoto's rig . . . . I'm third party. I do what I do for my [TESCO] tool. I make sure everything is right with my tool before operating my tool. I don't do -- I don't operate their rig . . . .

\* \* \* \* \*

In my area that I was working in, everything was safe.

Defendants' lack of control over movement of the top drive distinguishes this case from The Shaw Group, on which Williams relies. TESCO employees such as Anderson were prohibited from operating Rig #9 or moving its top drive. As the district court noted, if Williams had been injured by the TESCO tool when Anderson was operating it, "then the duty question would be clear." Anderson, 2012 WL 1314150, at *3. Likewise, if Anderson, on the scene, knew or should have known that Williams would be in harm's way if Long moved the top drive, Arkansas common law would doubtless impose a duty to alert Long and his bosses to the danger. But there is no evidence that Anderson had reason to suspect that Williams was still on the mast. Nor is there evidence that Anderson failed to follow his normal safety procedures during casing operations. Rather, Williams and Chartis assert that Anderson was negligent because he did not independently perform safety procedures he had every reason to believe DeSoto had followed. We agree with the district court that Anderson and TESCO had no duty to foresee that injury to a DeSoto employee would occur because other DeSoto employees not under Defendants' control had failed to exercise their duty of care. See Kincade v. U.S. Elec. Motors, Inc., 219 F.3d

-9-

800, 802 (8th Cir. 2000); <u>Jackson v. Petit Jean Elec. Co-op.</u>, 606 S.W.2d 66, 68-69 (Ark. 1980).

Third, Chartis argues that Anderson's act of telling Long to "pick it up," without ensuring it was safe to do so, presents a jury question as to foreseeability under the principle that one who gives "substantial assistance or encouragement" to the tortious conduct of another, knowing the conduct is a breach of duty, is liable for resulting harm to a third party. Restatement of Torts § 876(b), followed in <u>Cobb v. Indian Springs Inc.</u>, 522 S.W.2d 383, 387 (Ark. 1975). The district court carefully considered this contention and concluded that, on these facts, ordinary care did not require Anderson to foresee that his encouraging word would cause Long to do something he had not already decided, indeed, been ordered to do. We agree.

In <u>Cobb</u>, a mobile home park security guard asked a sixteen-year-old to demonstrate how fast his new car could go. While speeding around the park, the minor lost control, injuring a bystander. Emphasizing the guard's authority, the fact that he commanded the respect of minors residing in the park, and the foreseeability that injury might occur as a result of his encouragement, the Supreme Court of Arkansas reversed a directed verdict in favor of the guard and his employer. 522 S.W.2d at 387-89.

Here, by contrast, Anderson did not control Long or the other DeSoto employees who controlled the operation of Rig #9. Regardless of what Anderson might say to Long, as operations manager Payne put it, "it's a DeSoto employee that is the one that makes the decision whether or not to engage the clutch and raise the [top drive]." This chain of command was confirmed by Williams, who testified that he could not remember a time when Anderson "gave [Williams] any direction or told [him] to do anything out on the rig." Having no control over Long's operation of the top drive, Anderson had no reason to foresee that his saying, "pick it up," would cause Long to raise the top drive without ensuring it was safe to do so. <u>Accord</u> <u>Smith</u>

-10-

v. Hansen, 914 S.W.2d 285, 290 (Ark. 1996) (construing Cobb as requiring "some control over the third party that causes the injury"). Nor was there any evidence that Long looked to any TESCO employee for guidance or direction in operating the top drive. He looked to Hargis, DeSoto's rig foreman.

Finally, the amount of encouragement Anderson gave Long was insubstantial, especially in light of the directions Long received from Pendergraff and Hargis. On Hargis's orders, Williams and Cox climbed atop the rig mast to make repairs. Long testified that, after Cox climbed down and reported that he had finished his work, Pendergraff told the crew, "[I]f we're ready to go, we need to get this show on the road. I got cement trucks here waiting. We need to keep things going." Long further testified that Hargis agreed, saying, "yeah, let's go." Long's testimony in this regard was corroborated by Anderson. As the district court recognized, unlike the teenager driver in Cobb, Long had been independently instructed by Hargis, his supervisor, and by Pendergraff, the Operator's representative, to "get on with it." In these circumstances, Anderson could not reasonably foresee that his similar words of encouragement would create a risk of harm to another DeSoto employee. See Anderson, 2012 WL 1314150, at *4 ("Anderson had less authority and gave weaker encouragement than did the security guard whose acts presented a jury question.").

### III. Motions to Strike and Amend

**A.** After TESCO and Anderson renewed their summary judgment motion, Williams attached to his responsive brief a second report from expert witness Gregg Perkin opining that, "during casing operations, DeSoto personnel operated Rig 9 at the direction and control of Tesco," that "Tesco had a duty to SWE and DeSoto to direct, oversee and control the operations of Rig 9 insofar as assembling joints of casing to the casing string," and that "Tesco had the authority to resume casing operations." Williams appeals the district court's order striking this report, and two Recommended Practice Standards from the American Petroleum Institute, because

they were new materials submitted long after the summary judgment record was closed and contrary to the court's prior order inviting the parties to submit additional briefing with "focused excerpts *from the evidentiary record*" concerning the relationship between DeSoto and TESCO. Williams, 2011 WL 4527361, at \*5 (emphasis added). Without noting the appropriate standard of review, as Rule 28(a)(9)(B) of the Federal Rules of Appellate Procedure requires, Williams argues the district court erred because Rules 26(a)(2)(E) and (e)(2) of the Federal Rules of Civil Procedure permitted him to supplement Perkin's initial expert report in response to the district court's request for additional briefing.

This contention is without merit. First, district courts have broad discretion in maintaining compliance with discovery and pretrial orders, and we review this ruling for "clear and prejudicial abuse of discretion." In re Baycol Prods. Litig., 596 F.3d 884, 888 (8th Cir. 2010) (quotations omitted); Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008-09 (8th Cir. 1998). Second, these additional materials were clearly untimely -- Williams's expert report was due on August 23, 2010, and discovery closed on November 15, 2010. Third, Perkin was materially altering, not merely clarifying his original report, where he said, "[a]s is the custom and practice in the industry . . . Tesco would work in cooperation with DeSoto's Rig Crew to pick-up, handle, make-up and run the . . . casing into the hole," and his deposition testimony, where he said that DeSoto and TESCO employees worked together and anyone can stop work because of safety concerns, but only Long, Hargis, and Nathan Francis (all DeSoto employees) had the authority to restart the casing operation. Fourth, the untimeliness was not substantially harmless because allowing the belated second report would require reopening discovery so Defendants may redepose Perkin, thus delaying trial. See Popoalii v. Correctional Med. Servs., 512 F.3d 488, 498-99 (8th Cir. 2008). Finally, any error by the district court was clearly harmless because Perkin's second opinion on the control issue was either an assertion of fact based on no firsthand knowledge, or a legal conclusion he was not qualified to make regarding a question of law within the province of the district court.

**B.** Approximately seven weeks before the scheduled trial, Williams moved to amend his complaint to add a direct claim of negligence against TESCO for its failure to train Anderson on SWE's safety rules, as the contract required. In granting TESCO and Anderson summary judgment two weeks later, the district court denied the motion, noting that the deadline for amending pleadings had long passed and it would be unfair to Defendants to add a new, direct theory of liability when TESCO had prepared to defend a claim of *respondeat superior* liability. See Anderson, 2012 WL 1314150, at *1. Citing the liberal standard for amending pleadings set forth in Rule 15(a)(2), Williams argues the court abused its discretion in denying this motion because the additional theory would not prejudice Defendants. We disagree.

First, a motion for leave to amend filed outside the district court's Rule 16(b) scheduling order requires a showing of good cause, and Williams failed to demonstrate diligence in attempting to meet the court's December 7, 2010 deadline. See Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir. 2008); In re Milk Prods. Antitrust Litig., 195 F.3d 430, 437 (8th Cir. 1999), cert. denied, 529 U.S. 1038 (2000). Second, as the district court noted, Williams's proposed amendment just weeks before trial was plainly prejudicial. Finally, given the district court's decision on the merits that Anderson was not negligent as a matter of law, we fail to see how TESCO's failure to train Anderson could have caused Williams's injury, so the proposed amendment was futile. Accordingly, there was no abuse of discretion in denying the motion to amend.

The judgment of the district court is affirmed.

_____