# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 13-1981

———————————————

Kena Harris, as Administrator of the Estate of Chaungene L. Ward, Deceased;
Monica Nolan

*Plaintiffs - Appellants*

v.

FedEx National LTL, Inc.

*Defendant - Appellee*

————————

Appeal from United States District Court
for the District of Nebraska - Omaha

————————

Submitted: March 25, 2014
Filed: July 24, 2014

————————

Before LOKEN, BYE, and BENTON, Circuit Judges.

————————

LOKEN, Circuit Judge.

On October 28, 2007, commercial truck driver Oleg Velichkov lost control and rolled his tractor-trailer, which came to rest blocking both lanes of westbound Interstate 80 in York County, Nebraska. A vehicle driven by Chaungene L. Ward collided with the over-turned truck, killing Ward and seriously injuring his passenger,

Monica Nolan. At the time of the accident, Velichkov was employed by Fresh Start, Inc. ("Fresh Start"), driving a tractor leased by Mickey's Trucking Express, Inc. ("Mickey's"), to Fresh Start. The tractor was pulling two trailers owned by FedEx National LTL, Inc. ("FedEx") from FedEx's Cincinnati, Ohio, service center to its service center in Salt Lake City, Utah. Ward's estate and Nolan brought this diversity action against Velichkov, Fresh Start, Mickey's, the husband and wife who owned Fresh Start and Mickey's, and FedEx, alleging various theories of tort liability. After discovery, the district court[1] granted FedEx's motion for summary judgment. Plaintiffs eventually dismissed their remaining claims with prejudice, resulting in a final judgment, and now appeal the grant of summary judgment to FedEx. Reviewing the grant of summary judgment *de novo* and applying the governing law of Nebraska, we affirm. See Williams v. TESCO Servs., Inc., 719 F.3d 968, 970, 972 (8th Cir. 2013) (standard of review).

The ultimate issue is whether FedEx is liable for the admitted negligence of truck driver Velichkov. In opposing summary judgment, plaintiffs asserted four theories of liability under Nebraska law. The district court rejected the three theories asserted in plaintiffs' complaint on the merits. It rejected the fourth by denying as untimely plaintiffs' motion to amend their complaint. We construe plaintiffs' rather ambiguous briefs as appealing all four rulings. We consider the four theories in turn, viewing the facts material to each, when disputed, in the light most favorable to plaintiffs, the non-moving parties. Id. at 970.

## I. The Employer/Independent Contractor Issue

FedEx, in addition to employing its own drivers and vehicles to deliver goods to its shipper-customers, contracts with independent motor carriers to transport goods

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

and trailers between FedEx service centers. At times, these carriers provide the drivers, the tractors, and the trailers for this service. At other times, FedEx retains "subhaulers" that provide drivers and tractors to pull FedEx trailers in what FedEx refers to as a "power only" relationship. In mid-September 2007, Fresh Start and FedEx entered into a written Subhaul Agreement providing that Fresh Start would provide transportation services as an independent contractor. In an Addendum, Fresh Start agreed to comply with twelve detailed requirements when pulling FedEx-owned trailers on a "power only" basis. On October 26, Fresh Start's owner received a power-only assignment from FedEx's central dispatch and assigned driver Velichkov to complete the job. He drove the tractor to FedEx service centers to pick up and drop off trailers. The accident occurred during the last leg of the assignment, when Velichkov was transporting two FedEx-owned trailers from the Cincinnati service center to the Salt Lake City service center.

Under Nebraska law, one who employs an independent contractor is generally not liable for physical harm caused to another by the acts or omissions of the contractor or its servants. Plaintiffs' complaint alleged that FedEx was nonetheless liable for Velichkov's negligence because he was acting as FedEx's employee or servant at the time of the accident. Whether a truck driver is acting as an employee or as an independent contractor "depends on the facts underlying the relationship of the parties irrespective of the words or terminology used by the parties to characterize and describe their relationship." Kime v. Hobbs, 562 N.W.2d 705, 711 (Neb. 1997). Thus, the Subhaul Agreement, which provided that Fresh Start was an independent contractor, is relevant but not controlling. Though ordinarily a question of fact, "where the facts are not in dispute and where the inference is clear that there is, or is not, a master and servant relationship, the matter is a question of law." Id.

Applying the ten factors considered by the Supreme Court of Nebraska in Kime and other cases, the district court concluded that Fresh Start, and therefore its employee, Velichkov, were independent contractors of FedEx as a matter of Nebraska

law. Addressing the critical control factor, the district court acknowledged that the Addendum to the Subhaul Agreement placed conditions on the manner in which Fresh Start and its servants could transport FedEx-owned trailers but concluded that these requirements "were to assure performance of the delivery -- in other words, to control 'the final result of the work' instead of 'the specific manner in which the work is performed.'" Harris v. Velichkov, 860 F. Supp. 2d 970, 983 (D. Neb. 2012), quoting Omaha World-Herald v. Dernier, 570 N.W.2d 508, 514 (Neb. 1997). In addition, the court reasoned, "plaintiffs' focus on the element of control ignores the remaining nine factors listed above, several of which weigh (and weigh heavily) in favor of an independent contractor relationship." Id.

On appeal, plaintiffs argue the district court erred in granting summary judgment on this issue because it misconstrued in FedEx's favor the extent to which FedEx controlled how power-only drivers performed this service. We disagree. The district court applied the proper standard under Nebraska law, carefully considered the control factor, and concluded "[t]here is no evidence from which a reasonable trier of fact could conclude that Fresh Start was FedEx's 'employee' -- much less that Velichkov was." Id. at 983-84. The minor ways in which plaintiffs argue the district court improperly credited FedEx's view of the facts were not material to this ruling. The use of an independent power-only contractor to pull FedEx trailers between FedEx service centers was not comparable to the agreement in Huggins v. FedEx Ground Package System, Inc., where FedEx required an independent contractor and its drivers "to look and act like FedEx employees while they performed FedEx [package delivery] services" for FedEx customers. 592 F.3d 853, 859 (8th Cir. 2010).

## II. The Nondelegable Duty Theory.

The Supreme Court of Nebraska has recognized limited exceptions to the general rule that one who employs an independent contractor is not liable for harm caused by the contractor's employees. One exception is when "the employer [here,

-4-

FedEx] has a nondelegable duty to protect another from harm. Nondelegable duties include . . . a duty imposed by statute or rule of law, and . . . the duty of due care when the independent contractor's work involves special risks or dangers." Eastlick v. Lueder Constr. Co., 741 N.W.2d 628, 634-35 (Neb. 2007) (citations omitted). Plaintiffs do not argue that "special risks or dangers" created a nondelegable duty in this case, no doubt because the Supreme Court of Nebraska has held that "a motor vehicle is not an inherently dangerous instrumentality," including when used in "the transportation of cattle in a tractor-trailer under normal conditions." Kime, 562 N.W.2d at 713; see Ek v. Herrington, 939 F.2d 839, 843-44 (9th Cir. 1991). Rather, plaintiffs argue that FedEx as a "motor carrier" subject to the Federal Motor Carrier Safety Regulations ("FMCSR") had a nondelegable duty under Nebraska law[2] to ensure that Fresh Start and its drivers, as independent contractors, adhered to those safety standards by reason of 49 C.F.R. § 390.11, which provides:

> Whenever . . . in this subchapter a duty is prescribed for a driver or a prohibition is imposed upon the driver, it shall be the duty of the motor carrier to require observance of such duty or prohibition. If the motor carrier is a driver, the driver shall likewise be bound.

Whether a duty is owed under Nebraska tort law is a question of law. Parrish v. Omaha Pub. Power Dist., 496 N.W.2d 902, 909 (Neb. 1993). The Supreme Court of Nebraska has not addressed whether the FMCSR -- or any other federal regulations -- create a nondelegable duty that regulated parties are liable for the harm caused by their independent contractors' violations. Indeed, that Court "ha[s] never held that an administrative regulation can . . . expand the scope of tort liability beyond the general duty to exercise reasonable care." A.W. v. Lancaster Cnty. Sch. Dist. 0001, 784 N.W.2d 907, 920 (Neb. 2010).

---

[2]We doubt there is a federal private right of action for a violation of the FMCSR. See Stewart v. Mitchell Transp., 241 F. Supp. 2d 1216, 1219-21 (D. Kan. 2002). In any event, plaintiffs did not assert such a claim.

The district court assumed without deciding that 49 C.F.R. § 390.11 "would support a nondelegable duty if it applied to FedEx" but noted that plaintiffs had no supporting authority for this state law theory. The court rejected the theory because "FedEx was not acting as a motor carrier in this case." While FedEx is a federally registered motor carrier and acts as such in delivering goods for its customers, the court explained, in this case it was a shipper of goods that hired Fresh Start, also a registered motor carrier, to provide transportation services. "A transportation company may have authority to act as a shipper, broker, or carrier, and the Court must focus on the specific transaction at issue, not whether FedEx acts as a motor carrier in other transactions." 860 F. Supp. 2d at 979, citing Schramm v. Foster, 341 F. Supp. 2d 536, 548 (D. Md. 2004) ("plaintiffs have failed to prove that Robinson acted as a motor carrier in the specific transaction at issue"). Section 390.11 of the regulations imposes a duty on *the* motor carrier to require that a driver comply with his duties. Fresh Start was the motor carrier in this transaction.

On appeal, plaintiffs argue (i) FedEx is a "for-hire motor carrier" as defined in 49 C.F.R. § 390.5 ("a person engaged in the transportation of goods or passengers for compensation"); (ii) the district court erred in applying the definition of "shipper" found in the inapplicable motor vehicle leasing regulations, 49 C.F.R. § 376.2(k) (a shipper is a "person who sends or receives property which is transported in interstate or foreign commerce"); and (iii) a motor carrier does not cease acting as a motor carrier when it contracts with a third party to assist in the transportation process. We agree with the district court and the cases it cited that the FMCSR applies to motor carriers, not to shippers who engage independent contractors to transport goods. Thus, the relevant inquiry is whether FedEx "acted as a motor carrier in the specific transaction at issue." Schramm, 341 F. Supp. 2d at 548.[3]

---

[3] Accord Caballero v. Archer, No. SA-04-CA-561-OG, 2007 WL 628755, at *4 (W.D. Tex. Feb. 1, 2007); Alaubali v. Rite Aid Corp., No. C 06-5787 SBA, 2007 WL 3035270, at *5 (N.D. Ca. Oct. 16, 2007), aff'd, 320 F. App'x 765 (9th Cir. 2009).

In this case, FedEx retained Fresh Start to move goods from one service center to another. Fresh Start selected its drivers without FedEx oversight and operated under its own authority as a registered motor carrier, rather than under FedEx's authority. One need not refer to the definition of shipper elsewhere in the extensive FMCSR regulations to determine that FedEx was acting as a shipper in this transaction. As the Second Circuit commented in Lyons v. Lancer Insurance Co., "The shipper is the *entity* that purchases the transportation services of the carrier." 681 F.3d 50, 59 (2d Cir. 2012) (emphasis added), cert. denied, 133 S. Ct. 1242 (2013). Because FedEx was not acting as a motor carrier, it had no duty -- nondelegable or otherwise -- to require that driver Velichkov observe his FMCSR duties by reason of 49 C.F.R. § 390.11. The district court properly granted summary judgment rejecting this theory.

### III. The Negligent Entrustment Theory.

Plaintiffs' complaint alleged that FedEx was liable because it negligently entrusted its trailers to Velichkov. Under Nebraska law,

> it is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in a manner as to create an unreasonable risk of harm to others.

DeWebster v. Watkins, 745 N.W.2d 330, 334 (Neb. 2008), quoting Restatement (Second) of Torts § 308. In opposing summary judgment, plaintiffs argued that FedEx had control of trailers it owned; that FedEx had a duty under § 380.113(a) of the FMCSR to ensure that Velichkov was certified and properly trained to operate a double trailer; and that FedEx's breach of this duty gave rise to a claim of negligent entrustment. The district court granted summary judgment dismissing this claim, concluding that, even if Velichkov was not properly certified (a disputed fact), FedEx

had no duty to inquire into that fact because Velichkov's employer, Fresh Start, not FedEx, was the motor carrier bound by the FMCSR regulations.

On appeal, citing § 390 of the Restatement, plaintiffs argue that FedEx may be liable even though it entrusted its trailers to Velichkov indirectly through a third party, Fresh Start. But even if the Supreme Court of Nebraska would adopt this aspect of § 390, there was no evidence that FedEx was aware of facts permitting a reasonable jury to find that it knew or should have known Velichkov was not a properly certified driver. Thus, as the district court recognized, the negligent entrustment claim turned on whether FedEx as a "motor carrier" was duty-bound by § 380.113 of the FMCSR to ensure Velichkov's certification. Once again, plaintiffs argue that FedEx was a "motor carrier" for purposes of § 380.113 simply because "it was engaged in the primary business of transporting goods for compensation." As we have explained, we agree with the district court that this is an overly broad, impractical interpretation of regulations drafted for other purposes. We acknowledge there might be specific facts that would warrant imposing § 380.113 duties, as a matter of federal law, on a registered motor carrier using a power-only independent contractor to pull trailers owned by the carrier-shipper. As plaintiffs have not presented such facts and are using this federal regulation to support a claim of negligence under state law, we agree with the district court that the undisputed facts warranted the grant of summary judgment dismissing the claim.

## IV. The Unpleaded Claim -- Negligent Hiring of Fresh Start

Count V of plaintiffs' complaint alleged that FedEx negligently hired and trained Velichkov to operate the tractor-trailer, a claim foreclosed by the district court's determination that Velichkov was an employee of an independent contractor, Fresh Start. The court's scheduling order allowed the parties until April 9, 2010 to file motions to amend their pleadings. After the scheduling order was amended four times to extend the discovery deadlines, on November 30, 2011, plaintiffs moved for

leave to amend their complaint to add allegations that (i) FedEx knew or should have known of Mickey's poor safety rating and Fresh Start's association with Mickey's, and therefore (ii) FedEx negligently hired, trained, supervised, and entrusted its trailers to independent contractor Fresh Start. Plaintiffs argued that these amendments were meant to "clarify" that their claims of negligence extended to FedEx's relationship with Fresh Start as well as driver Velichkov. The district court denied the motion for leave to amend for two reasons. First, the proposed amended complaint "would add an entirely new theory of recovery." Second, "more to the point," Rule 16(b)(4) of the Federal Rules of Civil Procedure requires a showing of good cause to amend outside the court's scheduling order, and "nothing in the plaintiffs' briefs explains, or seeks to explain, why they only sought leave to amend their complaint over 17 months after the deadline for doing so had passed." Harris v. Velichkov, Order of Feb. 21, 2012, at 2-3.

On appeal, plaintiffs concede that Rule 16(b)(4) provides the governing standard and requires a showing of good cause. See Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008). They argue there was good cause for their tardy request for leave to amend because the evidence supporting the new theories in the amended complaint became available during a discovery process that was unusually protracted due to scheduling difficulties not attributable to the plaintiffs. We review the district court's denial of leave to amend for abuse of discretion. Id.

"The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements. . . . Our cases reviewing Rule 16(b) rulings focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order." Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716-17 (8th Cir. 2008) (quotation omitted). A district court acts "within its discretion" in denying a motion to amend which made no attempt to show good cause. Freeman v. Busch, 349 F.3d 582, 589 (8th Cir. 2003); see Leary v. Daeschner, 349 F.3d 888, 907-08 & n.26 (6th Cir. 2003).

Here, plaintiffs seek to survive their lack of a good cause showing in the district court with a due-diligence argument not made to the district court -- that they learned the necessary facts in discovery after the scheduling order's deadline had passed. It would be extraordinary to allow a party to establish on appeal an abuse of discretion by the district court based on an argument not timely made to that court in exercising its discretion. But assuming such a showing is theoretically possible, plaintiffs do not come close to making it here -- they provide no specific citations to the summary judgment record that would permit us to conclude, in the first instance, that they acted promptly when they *first* learned of newly discovered evidence that warranted the tardy assertion of new theories of FedEx liability that would undoubtedly have required further extensions of the discovery period to fully explore. Thus, the district court did not abuse its discretion in denying plaintiffs' untimely motion for leave to amend their complaint.

The judgment of the district court is affirmed.

_____