**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 19, 2020**

# In the Court of Appeals of Georgia

A20A1377. STUBBS OIL COMPANY, INC. v. PRICE et al.

A20A1396. FEDERATED SERVICE INSURANCE COMPANY v. PRICE et al.

DILLARD, Presiding Judge.

The underlying facts of this case are tragic. On a dry, warm morning in June 2015, Christopher Mark Hinson—driving a tanker truck for Southern Oil Refinery, LLC—collided into a compact vehicle traveling at a speed of 79 miles per hour, killing three people—Beverly McLain Baird, Nicholas Price, and Ricardo Dewberry. Hinson—an employee of Southern Oil—was on his way to a terminal in Macon to obtain fuel for a delivery to a retail sales customer at the time of the accident. The decisions and practices of Hinson and Southern Oil that allegedly lead to this

devastating loss of life are, if true, deeply troubling.[1] But this appeal is not about the actions or inactions of Southern Oil or Hinson. Instead, this Court is asked to consider whether Stubbs Oil—who hired Southern Oil to deliver fuel products to its retail sales customers—and its insurer, Federated Service Insurance Company, can be held liable under federal and state law for Southern Oil and Hinson's action or inactions. We answer this question in the negative.[2]

In bringing their claims, Gloria Jean and Randy Price and Benny and Robin Baird alleged,[3] *inter alia*, that (1) Hinson's negligent operation of a fuel tanker truck resulted in a collision with a compact vehicle driven by Beverly McLain Baird, killing her and two passengers, Nicholas Price and Ricardo Dewberry; (2) Southern

---

[1] For example, at the time of the accident, the plaintiffs allege that Hinson was asleep at the wheel and under the influence of illegally prescribed drugs.

[2] Oral argument was held in these consolidated cases on June 2, 2020, and is currently archived on the Court's website for public viewing. *See* Court of Appeals of Georgia, Oral Argument, Case Nos. A20A1377, A20A1396 (June 2, 2020), available at https://www.gaappeals.us/oav/A20A1377-1396.php.

[3] The Prices brought claims individually against, among others, Hinson, Southern Oil, Stubbs Oil, and Federated, and Gloria Jean also did so on behalf of the Estate of Nicholas Price. The Bairds likewise filed cross-claims individually against, among others, Hinson, Southern Oil, Stubbs Oil, and Federated, and Benny also did so on behalf of the Estate of Beverly Mclain Baird. For ease of reference, we refer to the Prices, Bairds, and the Estates collectively as "the plaintiffs" throughout this opinion.

2

Oil and Stubbs Oil were vicariously liable; (3) Stubbs Oil owed a duty to ensure Southern Oil's carrier status; and (4) Federated was liable under a statute that allows for direct actions against an insurer of a motor carrier for hire. Stubbs Oil and Federated filed motions for summary judgment, arguing that the plaintiffs' claims sought to improperly expand liability against them under federal and state law. The trial court denied these motions, and Stubbs Oil and Federated filed separate applications for interlocutory appeal, which we granted.

In Case No. A20A1377, Stubbs Oil contends that it cannot be held vicariously liable to the plaintiffs because (1) it is not Hinson or Southern Oil's statutory employer under the Federal Motor Carrier Safety Regulations ("FMCSRs");[4] (2) Southern Oil was acting as an independent contractor; (3) and it owed no duty to ensure Southern Oil's carrier status at the time of the accident. In Case No. A20A1396, Federated similarly contends that Stubbs Oil cannot be held vicariously liable to the plaintiffs and, regardless, it is not subject to a direct action under the statute allowing actions against insurers of a motor carrier for hire. For the reasons set forth *infra*, we reverse the trial court's denial of summary judgment in both cases.

---

[4] *See* 49 USC § 31101 *et seq*.; 49 CFR § 391.1 *et seq*.

3

Viewed in the light most favorable to the plaintiffs (*i.e.*, the nonmovants),[5] the record shows that Stubbs Oil purchases fuel products from large oil companies and then resells the products to individual retail gas station franchises and agricultural and governmental entities. In doing so, Stubbs Oil executed what is termed a "Branded Jobber Contract" with British Petroleum North America ("BP"), which allowed it to purchase fuel from BP terminals and then resell the fuel to retail BP-authorized gas stations. Importantly, once fuel was drawn from a BP terminal, Stubbs Oil owned the fuel. Indeed, the contract between the companies specifically provided that "title and risk of loss to all Products sold to [Stubbs Oil] under the Contract will pass to [Stubbs Oil] f.o.b. [Stubbs Oil] Designated Terminals at the time of loading into [Stubbs Oil's] transport equipment, including any contract carrier equipment engaged by [Stubbs Oil]."

Although Stubbs Oil had a valid DOT number and several vehicles capable of handling small-scale fuel deliveries, those vehicles could not be used to transport fuel to its retail service station customers. Consequently, to deliver fuel to service stations,

5 *See Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 697 (730 SE2d 164) (2012) ("[A] de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (punctuation omitted)).

Stubbs Oil hired third-party motor carriers, who owned larger fuel tankers—such as A&W Oil, Eagle Transport, and Southern Oil. But Stubbs Oil did not have written contracts with any of those carriers. Rather, the typical procedure for scheduling deliveries started with Stubbs Oil's operations manager. This manager would contact a third-party carrier, inquire if it could make a delivery, and, if so, email the carrier a loading ticket designating the terminal, supplier, volume of fuel, window of time for delivery, and destination. Thereafter, Stubbs Oil did not monitor the carrier or oversee its actions at the fuel terminal beyond providing it with an account number, which was used to draw fuel. Nor did Stubbs Oil dictate the carrier's route or method of delivery. This hands-off approach to fuel deliveries by Stubbs Oil is hardly surprising, and is typical of any shipper engaging the services of an independent delivery contractor. So, upon completion of any delivery, the third-party carrier provided Stubbs Oil with a bill of lading and an invoice, and Stubbs Oil, in turn, paid for the delivery.

As noted *supra*, Southern Oil was one of the third-party carriers Stubbs Oil hired on occasion to transport its fuel to retail service stations . And while Southern Oil owned a service station, a significant amount of its business entailed transporting fuel. In doing so, Southern Oil operated under its own DOT number and owned a

5

large fuel tanker, which it used to transport fuel products for its own use and for clients—including Stubbs Oil.

In January 2014, Hinson began working full-time as a truck driver for Southern Oil. Typically, when Southern Oil was hired to transport fuel, its dispatcher contacted Hinson and provided him with instructions for the delivery, including whether the delivery was to one of Southern Oil's customers or on behalf of a third-party shipper. After a delivery was completed, Hinson turned in the bills of lading and fuel sheets to Southern Oil's dispatcher.

On June 18, 2015, the day before the accident, Stubbs Oil sent Southern Oil's dispatcher an email requesting delivery of fuel to one of its retail gas station customers. Specifically, the email—entitled "Friday AM Load"—noted: "please dispatch the attached load to run first out Friday out of Macon. Please confirm load." The dispatcher accepted the delivery request and left the necessary instructions for Hinson. The next morning, June 19, 2015, Hinson retrieved the fuel tanker truck from Southern Oil's facility. And while en route to the BP terminal to pick up the fuel, Hinson's tanker truck rear-ended a vehicle driven by Beverly Baird, killing her and two passengers, Nicholas Price and Ricardo Dewberry.

Thereafter, Gloria Jean and Randy Price, individually, and Gloria Jean, as administrator of the Estate of Nicholas Price, filed suit against, among others, Baird's estate; Hinson; Southern Oil; Stubbs Oil; and Federated Service. Additionally, Benny and Robin Baird, individually, and Benny as administrator of the Estate of Beverly Mclain Baird, filed cross-claims against, among others, Hinson, Southern Oil, Stubbs Oil, and Federated. Specifically, these plaintiffs alleged that Hinson's negligent operation of the fuel tanker truck resulted in a motor-vehicle collision that killed three people and Southern Oil was vicariously liable as Hinson's employer. In addition, the plaintiffs argued that Stubbs Oil was vicariously liable because it acted as Hinson and Southern Oil's statutory employer under the FMCSRs and that Federated was liable under a statute permitting direct actions against the insurer of a motor carrier for hire. Subsequently, all of the defendants filed answers, and discovery ensued.

Following discovery, Stubbs Oil filed a motion for summary judgment, arguing that (1) it could not be held vicariously liable to the plaintiffs for Hinson or Southern Oil's alleged negligence because it was a shipper, rather than a motor carrier for hire, and was not a statutory employer under the FMCSRs; (2) Hinson and Southern Oil were independent contractors under Georgia law; and (3) it owed no duty to ensure Southern Oil's carrier status. That same day, Federated also filed a motion for

summary judgment, similarly arguing that Stubbs Oil could not be held vicariously liable and that, regardless, it was not subject to a direct action under the statute permitting such actions against insurers of a motor carrier for hire. The plaintiffs filed a response, and the trial court held a hearing on the matter, after which it took the motions under advisement. And ultimately, the trial court issued a brief order denying Stubbs Oil and Federated's motions. In doing so, the trial court found that Southern Oil could only operate as a private motor carrier, and therefore, Stubbs Oil was—seemingly by implication—Hinson and Southern Oil's statutory employer. Stubbs Oil and Federated subsequently obtained certificates of immediate review and filed applications for interlocutory appeal, which this Court granted. These consolidated appeals follow.

It is well established that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6] If summary judgment is granted by a trial court, it enjoys no presumption of correctness on appeal, "and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56

---

[6] OCGA § 9-11-56 (c).

8

(c) have been met."[7] Moreover, a *de novo* standard of review applies to an appeal from a grant or denial of summary judgment, and "we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[8] With these guiding principles in mind, we will address the enumeration of errors raised in each of the consolidated cases.

*Case No. A20A1377*

1. Stubbs Oil contends that the trial court erred in finding it could be held vicariously liable to the plaintiffs as the statutory employer of Hinson and Southern Oil under the FMCSRs. We agree.

Importantly, as a general rule, the FMCSRs apply to "motor carriers, not to shippers who engage independent contractors to transport goods."[9] The FMCSRs define a "for-hire motor carrier" as "a person engaged in the transportation of goods

---

[7] *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

[8] *Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 697 (730 SE2d 164) (2012) (punctuation omitted); *accord Williams v. Johnson*, 344 Ga. App. 311, 314 (809 SE2d 839) (2018).

[9] *Harris v. FedEx Nat'l LTL, Inc.*, 760 F3d 780, 785 (II) (8th Cir. 2014); *see Camp v. TNT Logistics Corp.*, 553 F3d 502, 507 (II) (A) (1) (7th Cir. 2009) (Manion, J.) (holding that FMCSRs apply "[o]nly if [defendant] was functioning as a person engaged in the transportation of goods or passengers for compensation . . ." (punctuation omitted)).

or passengers for compensation."[10] In contrast, a "shipper" is defined as "a person who tenders property to a motor carrier or driver of a commercial motor vehicle for transportation in interstate commerce . . . ."[11] So here, because Stubbs Oil had a DOT number, the plaintiffs claim that it was a motor carrier under the FMCSRs. But the relevant inquiry is whether Stubbs Oil "acted as a motor carrier in the specific transaction at issue."[12] And in this case, it is undisputed that Stubbs Oil hired Southern Oil to transport its fuel products, and that Southern Oil used its own vehicle and driver in doing so. As a result, Stubbs Oil was acting as a shipper in this transaction.[13]

---

[10] 49 CFR § 390.5.

[11] *Id.*

[12] *Harris*, 760 F3d at 785 (II) (punctuation omitted); *accord Schramm v. Foster*, 341 FSupp2d 536, 548 (D. Md. 2004); *see Camp*, 553 F3d at 507 (II) (A) (1) (concluding that defendant's possession of a motor carrier license is not determinative of the applicability of FMCSRs).

[13] *See Harris*, 760 F3d at 785 (II) (holding that defendant FedEx was acting as a shipper rather than a motor carrier in the transaction at issue, and therefore, FMCSRs did not apply); *Lyons v. Lancer Ins. Co.*, 681 F3d 50, 59 (II) (B) (2d Cir. 2012) ("The shipper is the entity that purchases the transportation services of the carrier." (punctuation omitted)).

Nevertheless, the plaintiffs argue—and the trial court agreed—that Stubbs Oil can be held liable as the statutory employer of Hinson and Southern Oil under the FMCSRs. And to be sure, statutory employment is "a theory of vicarious liability created by the FMCSRs."[14] In relevant part, the FMCSRs define an "employer" as "any person engaged in a business affecting interstate commerce who owns or leases a commercial vehicle in connection with that business, or assigns employees to operate it. . . . ."[15] Moreover, in defining "employee," the FMCSRs specifically provide that an

> [e]mployee means any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle) . . . .[16]

---

[14] *Clarendon Nat'l Ins. Co. v. Johnson*, 293 Ga. App. 103, 108 (1) (a) (666 SE2d 567) (2008) (punctuation omitted); *see also Omega Contracting, Inc. v. Torres*, 191 SW3d 828, 848 (Tex. App. 2006) (same).

[15] 49 CFR § 390.5.

[16] *Id.*

Suffice it to say, the ownership or leasing of a commercial vehicle is critical to our analysis. And in construing the foregoing language, we have previously held that the existence of a lease between the defendant and owner of the vehicle involved in an accident is the defining element in creating a statutory employment relationship under the FMCSRs.[17] And so, absent evidence of either a written or oral lease between Hinson or Southern Oil and Stubbs Oil, the latter simply cannot be characterized as a statutory employer.[18]

Here, it is undisputed that Stubbs Oil did not own the tanker truck driven by Hinson and involved in the accident, and thus it was not operating as a motor carrier at that time. Additionally, there is no evidence of a written lease between Stubbs Oil and Southern Oil or Hinson regarding that vehicle. Furthermore, despite the plaintiffs' arguments, there is similarly no evidence of an oral lease between Southern

---

[17] *See Clarendon Nat'l Ins. Co.*, 293 Ga. App. at 108 (1) (a) (holding that whether defendant was a statutory employer under the FMCSRs centers around whether the defendant leased the truck or the services of the driver involved in the accident).

[18] *See Clarendon Nat'l Ins. Co.*, 293 Ga. App. at 108 (1) (a); *see also Clark v. Irvin*, 2011 WL 13152866 at 10 (III) (a) (i) (2) (M.D. Ga. 2011) (citing *Clarendon Nat'l Ins. Co.* in noting that existence of a lease is required for finding a statutory employment relationship under the FMCSRs); *Caballero v. Archer*, 2007 WL 628755 at 5 (W.D. Tx. 2007) (same).

Oil and Stubbs Oil. Rather, the evidence shows that (1) Southern Oil and Stubbs Oil denied the existence of an oral lease; (2) Hinson was directly employed by Southern Oil; (3) only Southern Oil contacted Hinson and directed his actions regarding deliveries; and (4) Stubbs Oil exercised no control over Hinson or Southern Oil beyond prescribing the basic parameters for the delivery. Additionally, the tanker truck involved in the accident bore the logo and DOT number of Southern Oil, not Stubbs Oil.

Nevertheless, in its order denying summary judgment, the trial court acknowledges being persuaded by a FMCSA document,[19] obtained by the plaintiffs from the FMCSA's Safety and Fitness Electronic Records ("SAFER") System.[20] This document indicates that, as of March 27, 2016, Southern Oil did not have authority to operate as motor carrier for hire. And based on this document, the trial court

---

[19] Stubbs Oil raises several admissibility issues with this document, but we need not address them because, for the reasons noted *infra*, it has no evidentiary value.

[20] The SAFER System offers, *inter alia*, company safety data to industry and the public over the internet. The specific document at issue is characterized as a "Company Snapshot," which is a concise electronic record of a company's identification, size, and safety rating. *See* U.S. Department of Transportation, Federal Motor Carrier Safety Administration, Safety and Fitness Electronic Records (SAFER) System, safer.fmcsa.dot.gov.

seemingly draws an inference that Southern Oil's lack of authority is evidence of the existence of a lease between Southern Oil and Stubbs Oil. This is a curious inference to make because the FMCSA document was created more than nine months *after* the accident. As a result, it is difficult to understand how this document provides any insight into Southern Oil's authority at the time of the accident. We are also puzzled by this inference in light of the plaintiffs' explicit characterization of Southern Oil as a motor carrier for hire in their own pleadings. In any event, the trial court fails to cite any statutory or case authority supporting its inference, which we flatly reject. Moreover, contrary to the implication of the trial court's order, "an oral lease cannot be inferred from the fact that [Stubbs Oil] held DOT authority to act as a motor carrier and could have entered into a lease."[21] Given these circumstances, the trial court erred in concluding that Stubbs Oil was the statutory employer of Southern Oil and Hinson.[22] The FMCSRs apply to motor carriers, not to shippers engaging the services

---

[21] *Clarendon Nat'l Ins. Co.* at 109 (1) (a).

[22] *See id.* at 108-09 (1) (a) (holding that trucking company defendant was not a statutory employer under the FMCSRs of a truck driver involved in accident and, thus, was not vicariously liable, because there was no evidence that trucking company entered into a written or oral lease of truck driver's vehicle or his services); *Clark*, 2011 WL 13152866 at 11 (III) (a) (i) (2) (holding that defendant was not statutory employer of driver involved in collision as there was no evidence that defendant leased vehicle or driver's services); *see also Schramm v. Foster*, 341 FSupp2d 536,

of independent contractors to deliver fuel products.[23] Accordingly, we reverse the trial court's denial of Stubbs Oil's motion for summary judgment as to the plaintiffs' claim that it could be held vicariously liable as a statutory employer under the FMCSRs.

2. Stubbs Oil also argues that it cannot be held vicariously liable to the plaintiffs under a common law theory of *respondeat superior* because Southern Oil was acting as its independent contractor. Again, we agree.

OCGA § 51-2-4 provides that "[a]n employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the

549 (D. Md. 2004) (holding that the "focus of the court's inquiry [in a FMCSRs case] must be on . . . the specific transaction . . . and the nature of the relationship between [the relevant parties.]"); *Cf. PN Express, Inc. v. Zegel*, 304 Ga. App. 672, 673-74 (1) (697 SE2d 226) (2010) (holding that defendant was a statutory employer of driver involved in subject accident, under the FMCSRs, in light of driver's admission that the lease existed; the driver's constant daily telephone contact with defendant's manager during the course of trip and after the collision; and the fact that the driver's truck, although owned by driver, carried the defendant's and DOT number).

[23] *See Harris*, 760 F3d 780, 785 (8th Cir. 2014) (holding that "the FMCSR applies to motor carriers, not to shippers who engage independent contractors to transport goods."); *Caballero*, 2007 WL 628755 at 5 (same); *see also Camp*, 553 F3d 502, 507 (7th Cir. 2009) (holding that the FMCSRs only apply when an entity is "functioning as 'a person engaged in the transportation of goods or passengers for compensation[.]'").

employer." Indeed, in order for a plaintiff to overcome this general rule and impose liability, there needs to be a showing that

> the employer must have retained at least some degree of control over the manner in which the work was done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, as to operative details. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.[24]

Put more succinctly, in the absence of evidence of actual control, the test distinguishing an employee from an independent contractor is whether "the employer assumed the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract."[25]

---

[24] *Clarendon Nat'l Ins. Co.,* 293 Ga. App. at 109-10 (1) (b) (punctuation omitted).

[25] *Larmon v. CCR Enters.*, 285 Ga. App. 594, 596 (647 SE2d 306) (2007) (punctuation omitted); *accord Allrid v. Emory Univ.*, 249 Ga. 35, 40 (2) (285 SE2d 521) (1982); *see Ward v. DirecTV LLC*, 342 Ga. App. 69, 70 (801 SE2d 110) (2017) ("The right to control the manner and method means the right to tell the employee how he shall go about doing the job in *every detail*, including what tools he shall use

16

In this matter, it is undisputed that Stubbs Oil and Southern Oil are distinct and separate companies, and there is no evidence Stubbs Oil exercised the level of control over Southern Oil or Hinson necessary to saddle it with liability for their alleged negligence. As discussed *supra*, Stubbs Oil merely hired Southern Oil to transport its fuel products to a retail service station, but had no input as to the driver or the vehicle Southern Oil would use to complete that task. And while Stubbs Oil requested that the pick-up and delivery be completed during a particular window of time, as is the case with most delivery requests, it did not monitor Southern Oil or Hinson or oversee their actions, nor did it dictate Hinson's route. Consequently, the evidence shows that Stubbs Oil only retained the right to require results in conformity with the delivery request, and Southern Oil and its driver Hinson retained the right to perform the work

---

and what procedures he shall follow.").

by their own means, method, and manner.[26] Needless to say, the trial court erred in concluding otherwise.

3. Stubbs Oil further contends that the trial court erred in denying its motion for summary judgment as to the plaintiffs' claim that it owed a duty to ensure Southern Oil's carrier status. Once again, we agree.

Although not entirely clear from its order, the trial court seems to imply that Southern Oil's alleged lack of authority to operate as a motor carrier for hire creates a genuine issue of material fact as to whether Stubbs Oil failed to fulfill a duty to ensure Southern Oil's carrier's status. But again, we are unpersuaded by the question-begging inherent in the trial court's assumption that a document pertaining to Southern Oil's carrier status nine months *after* the accident offers any insight as to

---

[26] *See Clarendon Nat'l Ins. Co.* at 109-10 (1) (b) (holding that defendant trucking company could not be held vicariously liable for independent sales agent's hiring of truck driver who caused the subject accident as defendant exercised no control over the day-to-day operations of agent); *McLaine v. McLeod*, 291 Ga. App. 335, 340-41 (1) (661 SE2d 695) (2008) (holding that freight broker not liable for negligence of motor carrier and its employee driver because evidence showed broker exercised no control over carrier and driver, and thus, they were independent contractors); *Larmon*, 285 Ga. App. at 596 (concluding that even though defendant required that bus be delivered at a certain time and that drivers must conform to any applicable I.C.C. requirements, driver was nonetheless an independent contractor given that the manner and method of performing the delivery were left to the driver's discretion).

Stubbs Oil's duties. And to the extent the plaintiffs argue that Stubbs Oil should be liable for negligently hiring Southern Oil "because the act of driving a tractor-trailer is inherently dangerous, they have failed to cite to any Georgia authority to support their proposition."[27] Accordingly, the trial court erred in denying summary judgment as to this claim.

*Case No. A20A1396*

4. Federated similarly contends that Stubbs Oil cannot be held vicariously liable to the plaintiffs and argues that, regardless, it is not subject to a direct action under the statute allowing such actions against insurers of a motor carrier for hire. We agree.

OCGA § 40-1-112 (a) in part provides:

---

[27] *McLaine*, 291 Ga. App. at 342 (3); *see De Bord v. Proctor & Gamble Distrib. Co.*, 58 FSupp. 157, 160 (N.D. Ga. 1943) (noting that "[i]t has been held that a shipper has no duty to ascertain whether a motor carrier has complied with the State Motor Carrier Act, and consequently the fact that the carrier had failed to comply with the provisions of the Motor Carrier Act before proceeding to haul as an independent contractor would not render the shipper liable"); *see also Clarendon Nat'l Ins. Co.* 293 Ga. App. at 109-10 (1) (b) (holding that defendant trucking company could not be held vicariously liable for sales agent's hiring of truck driver who caused the subject accident given that sales agent and driver were independent contractors).

19

No motor carrier of household goods or property or passengers shall be issued a motor carrier certificate unless there is filed with the department a certificate of insurance for such applicant or holder on forms prescribed by the commissioner evidencing a policy of indemnity insurance by an insurance company licensed to do business in this state, which policy must provide for the protection, in case of passenger vehicles, of passengers and the public against injury proximately caused by the negligence of such motor carrier, its servants, or its agents; and, in the case of vehicles transporting household goods, to secure the owner or person entitled to recover against loss or damage to such household goods for which the motor common carrier may be legally liable.

And subsection (c) of this statute further provides: "It shall be permissible under this part for any person having a cause of action arising under this part to join in the same action the motor carrier and the insurance carrier, whether arising in tort or contract." As we have previously explained,

[t]he purpose of permitting joinder of the insurance company in a claim against a common carrier is to further the policy of the Motor Carrier Act, that is, to protect the public against injuries caused by the motor carrier's negligence. The [codified] intent of this [s]tate's motor carrier laws is that the insurer is to stand in the shoes of the motor carrier and

be liable in any instance of negligence where the motor carrier is liable.[28]

Importantly, the direct-action statute is "in derogation of common law, and its terms require strict compliance."[29]

In this case, the plaintiffs sued Federated, claiming that it is a proper defendant as the insurer of Stubbs Oil, which the plaintiffs assert is a motor carrier for hire. But as we held in Division 1, *supra*, in the transaction at issue, Stubbs Oil was acting as a shipper rather than a motor carrier for hire or a statutory employer.[30] In light of this holding, the plaintiffs have no cause of action under OCGA § 40-1-112 (c), and

---

[28] *Mornay v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 331 Ga. App. 112, 113 (769 SE2d 807) (2015) (punctuation omitted).

[29] *Id.*

[30] *See supra* notes 10 and 15.

Federated is not subject to a direct action under that statute.[31] As a result, the trial court also erred in denying Federated's motion for summary judgment.

For all these reasons, we reverse the trial court's order denying summary judgment in both Case No. A20A1377 and Case No. A20A1396.

*Judgment reversed in both cases. Rickman and Brown, JJ., concur.*

---

[31] *See Nat'l Union Fire Ins. Co. v. Sorrow*, 202 Ga. App. 517, 518 (414 SE2d 731) (1992) (holding that vehicle involved in accident was neither "motor common carrier" nor "motor contract carrier" as those terms were used predecessor statute to OCGA § 40-1-112 (The direct action statute in effect at the time of the accident was codified at former OCGA § 46-7-12. *See* Ga. L. 2012, p. 580, § 16), providing for direct prejudgment actions against liability insurers of same given that vehicle was used exclusively by owner to transport its own products, was never held out for hire to the public, and was not used or hired by the public for transportation of either goods or people); *Wolverine Ins. Co. v. Strickland*, 116 Ga. App. 62, 62-63 (156 SE2d 497) (1967) (concluding that the insurer was not directly liable under direct action statute because there was no evidence that the insured vehicle was being driven as a motor carrier at the time of the injury).