# IN THE COURT OF APPEALS OF IOWA

No. 19-0985
Filed October 7, 2020


**ESTATE OF PATRICK FIELDS, BY ITS ADMINISTRATOR, MICHELLE FIELDS, MICHELLE FIELDS, INDIVIDUALLY, K.F. BY HER NEXT FRIEND, MICHELLE FIELDS, A.F. BY HER NEXT FRIEND, MICHELLE FIELDS, JERRY FIELDS, INDIVIDUALLY AND MARY JANE FIELDS, INDIVIDUALLY,**
        Plaintiffs-Appellees,

**vs.**

**TROY SHAW; MICHAEL SHAW AND SHERRY SHAW, INDIVIDUALLY, AND D/B/A SHAW TRUCKING AND/OR SHAW FARMS; LANDUS COOPERATIVE D/B/A FARMERS COOPERATIVE COMPANY; AND GRINNELL MUTUAL REINSURANCE COMPANY,**
        Defendants-Appellants.
_____


Appeal from the Iowa District Court for Story County, James A. McGlynn, Judge.

A farm cooperative takes interlocutory appeal from the denial of its motion for summary judgment in a wrongful death suit arising from the actions of a grain hauler. **REVERSED AND REMANDED.**

Brenda K. Wallrichs of Lederer Weston Craig PLC, Cedar Rapids, and Kent A. Gummert of Lederer Weston Craig PLC, Des Moines, for appellants.

Brian P. Galligan of Galligan Law, P.C., Des Moines, Janice M. Thomas of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, Greg C. Schaffer of Schaffer Law Firm, San Francisco, California, and Robert T. Simon, Travis E. Davis, and Evan A. Garcia of The Simon Law Group, Hermosa Beach, California, for appellees.

Heard by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

Troy Shaw was hauling grain for the Landus Cooperative (Landus) when he crashed into a farm tractor driven by Patrick Fields, causing Fields's death. Fields's estate and family members[1] sued Troy; Troy's employer, Michael Shaw and Shaw Trucking; and Landus. The estate asserts two claims against Landus: (1) vicarious liability for Troy's negligence and (2) direct liability for negligently hiring Troy.[2] In this pretrial appeal, Landus challenges the district court's denial of its motion for summary judgment on the negligent-hiring claim. Landus contends it had no duty to evaluate the qualifications of an employee of its independent contractor.

Finding merit in that contention, we reverse the summary judgment ruling. The district court extended Landus's liability beyond what is supported by current Iowa authority. The record reveals no genuine issue of material fact to support the position that Landus "hired" Troy as an independent contractor. And the estate did not plead a claim that Landus was liable for failing to use reasonable care in selecting Michael as an independent contractor. Thus, we reverse and remand for entry of summary judgment for Landus on the negligent-hiring claim and for dismissal of the punitive-damages claim.

---

[1] We will refer to the plaintiffs collectively as the estate.
[2] Because the father and son in this proceeding share the last name Shaw, we will refer to them by their first names, Michael and Troy.

## I. Facts and Prior Proceedings

Landus is a farming cooperative that transports various agricultural goods and products across Iowa.[3]  In 2016, Landus engaged Michael—the owner of Shaw Trucking—as a grain hauler.  Michael agreed to work for Landus under an "Independent Contractor Agreement" stating:

> 1. This agreement does not constitute a hiring by either party. It is the parties intention that Independent Contractor shall have an Independent Contractor status and not be an employee for any purposes . . . .  Independent Contractor shall retain sole and absolute discretion in the manner and means of carrying out their activities and responsibilities under this Agreement.  This Agreement shall not be considered or construed to be a partnership or joint venture, and the Company shall not be liable for any obligations incurred by Independent Contractor unless specifically authorized in writing.  Independent Contractor shall not act as an agent of the Company, ostensibly or otherwise, nor bind the Company in any manner, unless specifically authorized to do so in writing.
> 2. Independent Contractor shall be responsible to the management and directors of Company, but Independent Contractor will not be required to follow or establish a regular or daily work schedule, Independent Contractor shall supply all necessary equipment, materials, and supplies.  Independent Contractor will not rely on the equipment or offices of Company for completion of tasks and duties set forth pursuant to this Agreement.

The agreement also indemnified Landus "against any and all liabilities . . . which may be imposed upon or incurred by or asserted against [Landus] as a result of any negligence or misconduct on Independent Contractor's part, or from any breach or default of" the agreement "which is caused or occasioned by the acts of Independent Contractor or agents for Independent Contractor."  Michael agreed to "assume[] all risk in the use and operation of the Independent Contractor's vehicle(s) and related vehicle equipment" as well as to

---

[3] Landus has its principal place of business in Ames and operates under the name Farmers Cooperative Company.

"be responsible for providing proper safety devices and equipment to safeguard users or operators of the vehicle and related equipment."[4]

For several months, Shaw Trucking hauled grain for Landus without incident. Michael employed his son, Troy, to do most of the driving—Troy drove ninety percent of the Landus hauls.[5] Troy testified that he did not talk to anyone working at Landus before he started making deliveries. Although Troy knew of the agreement between his father and Landus, Troy said he did not read the contract.

In June 2017, Troy was making a daytime delivery in one of Michael's semi-trailer trucks. His route crossed a "relatively flat and straight" stretch in rural Greene County. On that two-lane paved road, Troy crashed into the back of a farm tractor. The impact pushed the tractor into a ditch and flipped it upside down. The tractor driver, Patrick Fields, suffered fatal injuries in the collision.

At the scene, the Iowa State Patrol conducted an investigation and collected evidence. During an inventory of the truck, the officer discovered a spoon and pop can; both had burn marks on the bottom. The state crime laboratory reported finding heroin residue on them.[6] A few hours after the accident, the patrol took Troy's urine sample. When questioned, Troy denied using drugs or drinking alcohol before driving the truck. But he admitted taking hydrocodone, a painkiller, after the crash to relieve back pain. Troy's lab results returned positive for both morphine and norquetiapine, an anti-psychotic medication.

---

[4] Landus does not raise an argument about this indemnity provision on appeal.
[5] Both Michael and Troy had valid Iowa commercial driver's licenses.
[6] During his deposition, Troy testified the items found in the semi-trailer truck dated back to 2012.

Patrick Fields's estate—along with his parents, wife, and children—brought a wrongful death suit against Troy, Michael, Michael's companies—Shaw Trucking and Shaw Farms—and Landus. The estate asserted five main claims[7]: (1) Troy was negligent in operating the truck; (2) Michael was vicariously liable for Troy's negligence because Troy was acting as his agent at the time of the collision; (3) Michael was directly liable for negligently entrusting the truck and negligently hiring Troy; (4) Landus was vicariously liable for Troy's negligence because Troy acted as an agent or subagent for Landus; and (5) Landus was directly liable for negligently hiring Troy. In May 2018, Landus moved for summary judgment, contending it "retained no control over the day to day operations of Mike Shaw's business as an independent contractor, and therefore Landus did not owe a duty to plaintiffs." The district court interpreted Landus's argument as addressing only vicarious liability. The court found a genuine issue of material fact on whether Landus exercised substantial control over Michael's work to establish vicarious liability and, if so, whether Landus exercised its control with reasonable care. Thus, the court denied summary judgment.

After Landus moved for summary judgment, the estate filed an amended petition asserting a new punitive-damages claim against Landus for recklessness in employing Troy. Landus moved to dismiss the claim, asserting again that it owed no duty to Fields and could not be liable for the willful and wanton disregard

---

[7] The estate also sued Grinnell Mutual Reinsurance Company, Patrick Fields's carrier for underinsured-motorist coverage. But the district court granted the company's motion to sever. So that claim is not relevant to this appeal.

of the rights or safety of others. In line with its summary judgment ruling, the court found Landus *did* bear a duty to Fields and rejected the motion to dismiss.

In March 2019, Landus filed a motion for summary judgment on the negligent-hiring claim. Landus argued that Michael, as an independent contractor, made the sole hiring and firing decisions for his business. Because Landus had no control over who Michael hired as employees, Landus argued it had no duty to look into Troy's qualifications.

Rejecting that argument, the district court found that Landus did have a duty to investigate Troy. The court acknowledged Troy was "an employee or subcontractor of Shaw Trucking" and not of Landus. But it reasoned that at least two Landus employees knew Troy had a history of drug use.[8] That knowledge, the court found, imposed a duty on Landus to investigate Troy. Finding a genuine issue of material fact as to whether Landus breached that duty, and if so, whether its failure to screen Troy for drug use caused Patrick Fields's death, the court denied the motion. Landus unsuccessfully moved for reconsideration.

Landus then sought interlocutory review.[9] The supreme court granted the request and transferred the appeal to this court. Landus challenges the denial of its motion seeking summary judgment on the negligent-hiring claim.

---

[8] Debra Ott, a customer-service specialist, and Evan Hager, an operations technician, gave depositions. Hager testified he heard rumors that Troy used marijuana. Ott also was aware of rumors about Troy's drug use but could not remember when or from whom she heard that information.

[9] The estate did not resist Landus's application for interlocutory appeal.

## II. Scope and Standard of Review

We review a summary judgment ruling for correction of errors at law. *MidWestOne Bank v. Heartland Co-op*, 941 N.W.2d 876, 882 (Iowa 2020). Summary judgment is appropriate when there is no genuine issue of material fact, the only conflict is the legal consequences of undisputed facts, "and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted). "The moving party has the burden of showing the nonexistence of a material fact." *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015) (quoting *Hlubek v. Pelecky*, 701 N.W.2d 93, 95 (Iowa 2005)). "An issue is 'genuine' if the evidence in the record 'is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Wallace v. Des Moines Indep. Cmty. Sch. Dist. Bd. of Dirs.*, 754 N.W.2d 854, 857 (Iowa 2008)). "We view the evidence in the light most favorable to the nonmoving party, who is entitled to every legitimate inference that we may draw from the record." *Id.* at 6–7. "When the facts are undisputed, we reverse only if the district court misapplied the law." *Iowa Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001).

Summary judgment is usually not appropriate in negligence cases, as negligence or causation questions are normally for the jury. *Thompson v. Kaczinski*, 774 N.W.2d 829, 832 (Iowa 2009). "The moving party bears the burden of demonstrating the nonexistence of a material fact question." *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 545 (Iowa 2018). But "the nonmoving party may not rest upon the mere allegations of his [or her] pleading but must set forth specific facts showing the existence of a genuine issue for trial." *Id.* (alteration in original) (citation omitted).

### III. Analysis

To begin, we clarify this appeal's scope. In its briefing, the estate devotes considerable space to the issue of vicarious liability determined in the first motion for summary judgment. But Landus contests only the ruling on its second motion for summary judgment and the denial of its motion to dismiss the punitive-damages claim. Landus challenges the district court's conclusion that Landus could be directly liable to the estate for negligently hiring Troy.[10]

### A. Direct Liability Negligent-Hiring Claim

Landus first contends the court erred in concluding that an employer of an independent contractor has a duty to vet, qualify, and drug-screen the employees of the independent contractor. In Landus's view, the Restatement (Second) of Torts section 411 (Am. Law Inst. 1965)—as adopted by this court in *Jones v. Schneider National, Inc.*, 797 N.W.2d 611, 614–15 (Iowa Ct. App. 2011)—imposes a duty of reasonable care in "hiring" a contractor, not the contractor's employees. Landus also contends: "[W]hether an employer of an independent contractor owes duties to hire and select the independent contractor's employees, the conclusion is the same under [Restatement (Second) of Torts section 411] and the successor provision in [Restatement (Third) of Torts: Liability for Physical and Emotional Harm section 55 (Am. Law Inst. 2012)]." Although the district court focused on the

---

[10] The estate argues the second motion for summary judgment and motion to reconsider were procedurally improper because they repeated arguments the court rejected in the first motion for summary judgment. But the estate did not raise that objection below. So we cannot reach it here. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Restatement (Second) in its ruling, we will touch on section 55 of the Restatement (Third) of Torts.[11]

But first, we examine the tort of negligent hiring. The supreme court has recognized a claim for negligent hiring, which requires proof:

> (1) that the employer knew, or in the exercise of ordinary care should have known, of its employee's unfitness at the time of hiring;
> (2) that through the negligent hiring of the employee, the employee's incompetence, unfitness, or dangerous characteristics proximately caused the resulting injuries; and
> (3) that there is some employment or agency relationship between the tortfeasor and the defendant employer.

*Godar v. Edwards*, 588 N.W.2d 701, 708–09 (Iowa 1999) (quoting 27 Am. Jur. 2d *Employment Relationship* § 473, at 913 (1996)). The court went on to "conclude that an employer has a duty to exercise reasonable care in hiring individuals, who, because of their employment, may pose a threat of injury to members of the public." *Id.* at 709.

The court also recognized that a claim of negligent hiring includes a claim of negligent retention and supervision. *Id.* A negligent-retention-and-supervision claim requires proof that an employer failed "to exercise ordinary care in supervising the employment relationship so as to prevent the foreseeable misconduct of an employee from causing harm to others." *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 42 (Iowa 2018) (quoting 27 Am. Jur. 2d *Employment Relationships* § 375, at 885 (2014)). At its core, this claim requires proof the employer reasonably should have foreseen the risk of harm to third parties. *See id.*

---

[11] Counsel for Landus agreed in oral argument that we could look to either Restatement in analyzing the duty question.

Iowa courts frequently consult the Restatements as guidance on tort questions. Our supreme court has not adopted the employer-liability provisions of either the Restatement (Second) or the Restatement (Third) of Torts, but it has embraced or favorably discussed other sections. *See Ludman v. Davenport Assumption High Sch.*, 895 N.W.2d 902, 910 (Iowa 2017); *Thompson*, 774 N.W.2d at 829; *see also Jones*, 797 N.W.2d at 614 (collecting cases).

To resolve this appeal, we look first to the Restatement (Second) of Torts as our guide. Section 409 provides the general rule: "Except as stated in §§ 410–429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." But a comment to this section notes:

> [T]he law has progressed by the recognition of a large number of "exceptions" to the "general rule." These exceptions are stated in §§ 410–429. They are so numerous, and they have so far eroded the "general rule," that it can now be said to be "general" only in the sense that it is applied where no good reason is found for departing from it.

Restatement (Second) of Torts § 409 cmt. b. Section 411 ("Negligence in Selection of Contractor") provides one relevant exception to the general rule against employer liability:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a *competent and careful contractor*
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
> (b) to perform any duty which the employer owes to third persons.

*Id.* § 411 (emphasis added).

In *Jones*, we tacitly recognized that driving semi-trailer trucks could fall into the section 411 categories of work. 797 N.W.2d at 617. Jones, the employee of an independent contractor, Fehrle Trucking, was injured by the driver-owner, Elmer Fehrle. *Id.* at 612. Jones sued Fehrle's employer, Schneider Carriers, asserting Schneider "had not exercised reasonable care in selecting Fehrle Trucking as an independent contractor." *Id.* at 612–13. The issue was whether Schneider was liable to Jones as a "third person" under section 411. *Id.* at 615. This court held that the phrase "third persons" did not include "protection for employees of an independent contractor." *Id.* at 616.

We went further, though, and discussed whether the evidence Jones presented created a genuine issue of material fact—had recovery been permitted—that Schneider was liable for selecting Fehrle Trucking. *Id.* We found no genuine issue of material fact for two reasons. First, the evidence was insufficient for a jury to find Fehrle Trucking was unfit. In dicta, the opinion said, "we cannot expect an employer to obtain a driving record of each driver" for an over-the-road carrier. *Id.* at 617. Second, most of the evidence Jones presented arose after the date of hiring, yet "the plaintiff must prove that 'the employer knew, or in the exercise of reasonable care should have known, of . . . unfitness *at the time of hiring*.'" *Id.* at 617 (quoting *Godar*, 588 N.W.2d at 708) (alteration in original).[12] Because the record failed to reflect a genuine issue of material fact, we affirmed summary judgment for Schneider. *Id.*

---

[12] Unlike the estate, Jones did not allege negligent retention, only negligent hiring. *See Jones*, 797 N.W.2d at 617.

In sum, this court applied section 411 but denied Jones relief. *Id.* From *Jones* and other favorable discussions in previous cases, we find "ample authority for the adoption of section 411 as a standard of care that binds an employer in selecting an independent contractor." *Id.* at 615. Yet, like the district court, we recognize the *Jones* holding does not dictate the result here. *Jones* precludes recovery from the employer by an injured plaintiff who is an employee of an independent contractor. *See id.* It does not answer the question whether the employer has direct liability for acts of the independent contractor's employee.

We turn next to section 55 of the Restatement (Third) of Torts: Liability for Physical and Emotional Harm. Although similar in substance to the Restatement (Second), section 55 frames the analysis differently. As the New Mexico Court of Appeals recently explained:

> The Restatement (Third) of Torts, like the Restatement (Second) of Torts, includes specific rules for the [employers] of independent contractors, recognizing the policy-based modifications of duty that arose under the Restatement (Second) of Torts' approach. However, the Restatement (Second) of Torts' approach is grounded in a "general principle" that, subject to numerous exceptions, one who hires an "independent contractor is not liable for physical harm caused" by the contractor. Restatement (Second) of Torts § 409 . . . . In contrast, the Restatement (Third) of Torts begins with the imposition of a general duty of care and then crafts limitations based on "considerations of policy and principle that warrant limiting the duty of care owed by the hirer." [Restatement (Third) of Torts: Liability for Physical and Emotional Harm] § 55 cmt. a.

*Lopez v. Devon Energy Prod. Co.*, 468 P.3d 887, 894 (N.M. Ct. App. 2020).

In other words, section 55 presupposes that an employer who hires an independent contractor may be held liable for the negligent actions of the independent contractor. This approach differs from the Restatement (Second), which begins with the general rule that an employer is shielded from liability for the

harmful acts of its independent contractors.  The comments to section 55 further explain:

> Under this Section . . . when A hires B, A is subject to liability if A is under a duty of care and negligently causes harm within the scope of liability.  The involvement of additional independent contractors (or subcontractors) is a fact that may be relevant to the determination of negligence, factual cause, or scope of liability, but not to the existence of a duty of reasonable care.

Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 55 cmt. i.[13]

Under this framework, Landus may be subject to liability for Troy's conduct if the harm arose out of a breach of Landus's duty in hiring Michael and Shaw Trucking.  But as discussed later, we are unable to consider this line of argument because the estate did not plead a claim alleging that Landus was negligent in hiring Michael.  Instead, the complaint alleges only: "Defendant Landus was negligent in hiring Troy . . . and in failing to ensure Troy . . . exhibited the necessary skills, ability, and experience to operate the Shaw truck . . . in a safe and lawful manner."  Section 55 does not reach a negligent-hiring claim against an employee of the independent contractor, like Troy.

---

[13] Accompanying this comment is an illustration in which a party planner hires a fireworks vendor to provide a large show.  The vendor relies on two assistants who have no experience with large fireworks displays.  The negligent conduct of one of those assistants injures a party guest.  The planner had a duty of care because she hired a vendor to conduct an activity that posed a risk of physical harm to others.  The planner was liable to the guest for her negligence in hiring the vendor without inquiring into the vendor's qualifications if that negligence was a factual cause of the harm to the guest and the harm was within the scope of the risk posed by the negligence.  *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 55 cmt. i, illus. 7.  This scenario suggests Landus may have been liable to the estate for hiring Michael without inquiring into his qualifications had the estate pleaded that claim.

The estate's argument fares no better under section 411 of the Restatement (Second) as *Jones* adopted.  The comment to section 411 defines the standard of care that a reasonable person would use under the particular circumstances.  It emphasizes these factors:

> (1) the danger to which others will be exposed if the contractor's work is not properly done; (2) the character of the work to be done—whether the work lies within the competence of the average man or is work which can be properly done only by persons possessing special skill and training; and (3) the existence of a relation between the parties which imposes upon the one a peculiar duty of protecting the other.

Restatement (Second) of Torts § 411 cmt. c.

Citing this source, the district court found Landus had a duty "to carefully select and hire drivers it intended to use."  That included "a duty to investigate reports of drug use by Troy Shaw after he was hired as a driver."  But the court did not determine that Troy was a "contractor" under section 411 before imposing a duty on Landus.  Instead, the court premised its conclusion on the unexamined presumption that Troy "was hired as a driver."  While acknowledging Landus's position, the court found a question of material fact based on its expansive reading of section 411, reasoning:

> Landus asserts that it is insulated from responsibility because the independent contractor relationship was between Landus and Michael Shaw d/b/a Shaw Trucking, and was not directly with Troy Shaw. It is undisputed that Troy Shaw was not a signing party to the agreement with Landus.  Troy Shaw's employment was as an employee or subcontractor of Shaw Trucking.  The essence of this argument is that Landus delegated its hiring and retention duties under [section] 411 to Michael Shaw.  However Landus has not cited the Court to any authority which permits it to avoid its hiring and retention responsibilities to another party.  Therefore, Landus has failed to show that it can avoid its responsibilities on a theory of delegation.

Based on the foregoing, the Court finds that a fact question exists as to whether Landus breached its duty to the public as provided by [section] 411.

After considering existing Iowa case law, we find the court misapplied the duty analysis. When the court applies incorrect law, we must reverse. *Palmer*, 637 N.W.2d at 149.

As plaintiff, the estate must show it has a legal basis for claiming damages. In the complaint, the estate asserted that Troy "was acting within the course and scope of an employment and/or agency relationship with Michael Shaw . . . [and] Shaw Trucking." Also that Troy, Michael, and Shaw Trucking "were acting within the scope and course of an agency relationship with" Landus. The estate further maintained that at the time of the accident, Troy "was acting as an agent and/or subagent for" Landus. According to the estate's argument, because Landus failed to investigate whether Troy "exhibited the necessary skills, ability, and experience to operate the Shaw truck . . . in a safe and lawful manner," Landus was negligent in hiring Troy. The estate emphasizes Landus's failure to consider Troy's driving record and drug history and to test him for drugs.

Landus insists it had no duty to investigate each truck driver of its many independent contractors. In support, Landus points to the dicta in *Jones*, suggesting the employer had no responsibility to obtain a driving record for each over-the-road carrier working for the independent contractor. *See Jones*, 797 N.W.2d at 617. Landus faults the estate for not offering supporting authority to show that Landus had a duty to investigate, vet, drug-test, or otherwise qualify the

employees of Shaw Trucking, despite identifying Troy as a "subagent" of Landus in the pleadings.[14]

On the other hand, Landus claims the federal motor carrier safety regulations are controlling here, contending those regulations place the duty on Michael to vet, qualify, and drug-screen his employees. Landus cites *Harris v. Velichkov*, where the federal district court for Nebraska applied specific provisions of the federal regulations to determine whether an employer of an independent contractor could be liable under a nondelegable-duty doctrine. *See* 860 F. Supp. 2d 970, 984 (D. Neb. 2012). Repeating the designations in that case, Landus uses the terms "shippers" and "motor carriers" to distinguish the respective duties and obligations of Landus and Shaw Trucking.[15]

---

[14] The Eighth Circuit Court of Appeals reached the same conclusion in a factually similar case, *Harris v. FedEx National LTL, Inc.*, 760 F.3d 780, 783 (8th Cir. 2014). FedEx contracted with Fresh Start to transport its trailers between warehouses. *Harris*, 760 F.3d at 782. A driver for Fresh Start was involved in a fatal collision. *Id.* When the injured parties sued FedEx under the theory of respondeat superior in hiring, training, and supervising the driver, the court denied relief. It found no vicarious liability for a harm caused by the contractor or it servants. *Id.* at 783. When the plaintiffs argued FedEx was liable for the driver's negligence because he was acting as FedEx's employee or servant, the court weighed the factual assertions and determined he was not. *Id.* at 785. FedEx had no duty to inquire into the certification of the driver who was an employee of Fresh Start. *Id.* But the circuit court did not address the plaintiffs' negligent-hiring claim, as it went unpled below. *Id.* at 786. *Harris* still illustrates the difference in the two claims—vicarious liability of the employer is possible if the employee of the contractor was acting as an employee or servant of the employer. The direct-liability claim is a different theory, and one that our supreme court has not acknowledged.

[15] In *Velichkov*, the court determined that the federal regulations imposed a duty on motor carriers to investigate and otherwise qualify the drivers it hired for employment. 860 F. Supp. 2d at 980. So the case turned on whether FedEx, as an employer of an independent contractor, was a motor carrier. *Id.* at 979. The court defined motor carrier as "a person who owns or leases a commercial motor vehicle in connection with a business affecting interstate commerce." *Id.* (quoting 49 C.F.R. § 390.5). By contrast, a shipper "is someone who sends or receives property transported in interstate or foreign commerce." *Id.* (citing 49 C.F.R.

The estate complains that Landus did not focus on the federal motor carrier safety regulations in the district court. Landus counters that it argued in its motion to reconsider that the court's analysis was "contrary to the statutory duty imposed upon shippers by transportation laws." We need not settle this dispute. The discussion of the federal motor carrier safety regulations in *Velichkov* applied to the issue of a nondelegable duty and not to negligent hiring. *See id.* at 978–80. So we opt to decide the negligent-hiring issue before us without considering the federal regulations.[16]

Using the Restatements as guidance, we see no basis for imposing a duty on Landus to measure Troy's fitness to operate a semi-trailer truck. Section 411 of the Restatement (Second) imposes liability for harm to third persons caused by the employer's "failure to exercise reasonable care to employ a competent and careful contractor." The district court found that Troy was not a contractor or an employee of Landus. Yet it placed a duty on Landus "to carefully select and hire drivers it intended to use." Section 411 does not impose such a duty. Neither does section 55 of the Restatement (Third). Thus, Landus would not be liable for Troy's conduct as a servant or employee of its independent contractor.

---

§ 376.2(k)). The court concluded that the independent contractor, Fresh Start, was the motor carrier because it was responsible for transporting FedEx's products using its own transportation services. *Id.* Because it acted as a motor carrier, the court held that Fresh Start had the duty to investigate the drivers it hired as additional help. *Id.* at 980 (declining to impose burden of duty on FedEx who had no relationship with the Fresh Start drivers).

[16] We are also mindful that "the notion of nondelegable duty usually relates to vicarious liability." Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 55 cmt. d (clarifying that "the hirer's direct liability in negligence does not presuppose, or require a finding of, a nondelegable duty"). To avoid conflating the issue on appeal with the vicarious-liability issue still alive in the district court, we decline to address the federal regulations.

The undisputed facts show Landus never contracted with Troy and did not communicate with Troy before he began hauling for Michael. Troy did not see the contractor agreement. And no facts show Landus intended to use Troy as a driver—only that it intended to employ Michael's business, Shaw Trucking.[17] In briefing, the estate asserts the district court discussed the facts and supporting authority for Landus's "direct retention of Troy Shaw" in the first motion for summary judgment, discerning a direct employer-employee relationship. In its response to that motion, the estate quoted *Godar*, 588 N.W.2d at 709, for the principles governing the negligent-hiring tort, arguing: "[T]he traditional employer/employee relationship need not be present to invoke this doctrine. All that is required in that respect is a showing that 'there is some employment or agency relationship' between the parties." But the estate did not cite authority that established there was an "employment or agency relationship" between Landus and Troy, let alone "direct retention."

---

[17] The estate probably understood this distinction because their amended petition added allegations that both Troy and Michael were unfit to operate commercial vehicles and that Landus was aware of this incompetence. The estate alleged Landus was directly liable because of its lack of care in the hiring of "independent haulers," bringing Michael's competence and fitness into the action. The court also amended its ruling to specifically set forth its reliance on 49 C.F.R. section 382.301 (2016). That federal regulation states in pertinent part:

> Prior to the first time a driver performs safety-sensitive functions for an employer, the driver shall undergo testing for controlled substances as a condition prior to being used, unless the employer uses the exception in paragraph (b) of this section. No employer shall allow a driver, who the employer intends to hire or use, to perform safety-sensitive functions unless the employer has received a controlled substances test result from the [officer or administrator] indicating a verified negative test result for that driver.

49 C.F.R. § 382.301(a). This provides a claim against Michael as "a driver, who the employer intends to hire or use," but not against Troy because Troy is Michael's employee and Landus retained no control over Michael's hiring decisions.

To be clear, the negligent-hiring claim in the estate's amended complaint alleged the negligent hiring, retention, and supervision of Troy. The estate did not plead a claim that Landus was liable for failing to exercise reasonable care in hiring Michael as an independent contractor, which led to the hiring of Troy.

Comment (a) to section 409 of the Restatement (Second) of Torts defines "independent contractor" to mean "any person who does work for another under conditions which are not sufficient to make him a servant of the other. It is immaterial . . . whether it is done under a specific contract or under a general contract of employment." Our supreme court has found there is an employer-employee relationship "[w]hen the person hiring has the right to control the details of the work as well as the results." *LaFleur v. LaFleur*, 452 N.W.2d 406, 408 (Iowa 1990). "In contrast, if the person hired is free to do the work without being subject to the order of the person hiring as to details, the hired person is an independent contractor." *Id.*

Here, the Independent Contractor Agreement shows Landus and Michael did not agree to give Landus any significant control over the details of the trucking operation: they agreed Michael would "retain sole and absolute discretion in the manner and means of carrying out their activities and responsibilities under this Agreement." He would "not be required to follow or establish a regular or daily work schedule," or "rely on the equipment or offices of [Landus] for completion of tasks and duties set forth" in the agreement. Based on the agreement's language, Landus hired Michael as an independent contractor. But the record reveals no genuine issue of material fact that Landus directly hired Troy.

We stress that the conclusion in the second summary judgment ruling differs from that in the first summary judgment ruling on the vicarious-liability claim.[18] In the first ruling, the court determined Landus could be vicariously liable for Patrick Fields's death under section 414 of the Restatement (Second) of Torts, which deals with the issue of retained control:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Vicarious liability differs from the theory the estate advanced in the amended petition, and which Landus sought to dismiss in its second motion for summary judgment (that is, direct liability based on negligent hiring). The court's initial ruling finding a genuine issue of material fact whether Landus retained sufficient control over Shaw Trucking to impose vicarious liability for Troy's conduct does not change the scope of Landus's duty under section 411.

Neither our court nor the supreme court have extended section 411 to encompass the vetting of an employee of the independent contractor. Indeed, the estate does not identify an Iowa case that holds an employer liable under a theory of negligent hiring for the harm caused by an employee of its contractor. Because there is no current authority that supports adopting a broader interpretation of the Restatement provisions, we decline to do so. We leave it to our supreme court to determine whether section 411 of the Restatement (Second) of Torts or section 55

---

[18] When asked during oral arguments to distinguish the claims for vicarious liability from the claims for negligent hiring, retention, and supervision, both parties agreed that the concept of retained control applied only to the vicarious-liability claim.

of the Restatement (Third) of Torts: Liability for Physical and Emotional Harm should be extended to impose a duty on employers to vet the employees of their independent contractors. *See Rosauer Corp. v. Sapp Dev., L.L.C.*, 856 N.W.2d 906, 907 (Iowa 2014) (noting court of appeals "appropriately" deferred to supreme court on expansion of implied warranty).

We conclude the district court misapplied the law in denying Landus's motion for summary judgment on the claim of direct liability for negligent hiring. Our review of the record shows there is no genuine issue of material fact that Landus independently or separately hired or retained Troy. And we find no authority for extending an employer's direct liability to the conduct of its independent contractor's employee. Thus, Landus was entitled to summary judgment on the estate's claim under that theory. We reverse and remand for entry of an order dismissing this claim against Landus.

### B. Punitive Damages

The estate asserts a claim for punitive damages based on the direct liability theory—that Landus was negligent in hiring, retaining, and supervising Troy. We review the court's ruling on Landus's motion to dismiss for correction of errors at law. *Rees v. City of Shenandoah*, 682 N.W.2d 77, 78 (Iowa 2004). Because we have already found the estate has no claim on that ground, we reverse the court's ruling and remand for entry of an order to dismiss the claim for punitive damages.

**REVERSED AND REMANDED.**